E-FILED
Monday, 03 February, 2020 02:35:02 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| LARRY G. HARRIS,<br>  Plaintiff,<br><br>vs.<br><br>C. BRANNON, et. al.,<br>  Defendants | )<br>)<br>)<br>)  No. 19-4235<br>)<br>)<br>) |

MERIT REVIEW ORDER

The *pro se* Plaintiff filed his original complaint followed by a motion for leave to file an amended complaint adding two additional Defendants. [1, 5]. The motion for leave to amend is granted pursuant to Federal Rule of Civil Procedure 15. [5].

The Court is required by 28 U.S.C. §1915A to "screen" the Plaintiff's amended complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

The *pro se* Plaintiff claims Defendants Warden C. Brannon, Assistant Warden Hamilton, Internal Affairs Lieutenant Burke, Internal Affairs Officer N. McBride, Internal Affairs Officer Tyus, Adjustment Committee Member A. Wierma, Adjustment Committee Member Mark Tapia, Illinois Department of Corrections (IDOC) Director Jefferys, and Transfer Coordinator Doug Stevens violated Plaintiff's constitutional rights.

It is difficult to decipher Plaintiff's allegations from his complaint. First, Plaintiff has attached nearly 50 pages of exhibits. Plaintiff should instead include a short and plain statement of any intended claim in the body of his complaint. *See* Fed.R.Civ.P 8(a)(2). Second, it is difficult to discern the specific constitutional violations. Plaintiff includes several pages of "facts," and then lists three claims including First Amendment retaliation, Fourteenth Amendment due process; and Eighth Amendment conditions of confinement. (Amd. Comp., p. 7). However, each identified constitutional violation also includes several, vague and sweeping statements which confuse the basis for the claim. Nonetheless, the Court has identified the following claims based on a review of the complaint and attachments.

Plaintiff entered East Moline Correctional Center (EMCC) on March 27, 2019. Plaintiff is a 60-year-old white male who immediately experienced problems with gang members. Plaintiff says the gang members prevented inmates from using the phones and repeatedly robbed older inmates. Plaintiff reported the problems to Internal Affairs (IA) Investigator Burke and requested an investigation. Instead, Plaintiff says he became the victim of retaliatory conduct.[1]

Plaintiff does not provide the specific dates he complained to IA, but Plaintiff's attached grievances indicate he complained prior to the alleged acts of retaliatory conduct. (Comp, p. 27). Plaintiff then lists the following, specific acts of retaliation:

---

[1] While Plaintiff outlines the specific problems with mail and phones at EMCC, his complaint does not allege claims based on these two issues. (Amd. Comp., p.8-9).

1. <u>The Internal Affairs Defendants refused to investigate the August 28, 2019 theft of Plaintiff's property</u>. The Court notes in the attachments to Plaintiff's complaint, IA officers claim they spoke with Plaintiff, and interviewed the witnesses identified by Plaintiff. However, the officers stated they could not verify either the theft, or that Plaintiff owned the property prior to the alleged theft. (Amd. Comp., p. 28).

However, the Administrative Review Board (ARB) disagreed with the findings, and ordered EMCC to provide Plaintiff with a $267.47 reimbursement for his stolen property. (Amd. Comp., p. 29). Plaintiff apparently alleges IA Defendants Burke, McBride, and Tyus intentionally refused to consider his theft allegation.

2) <u>Defendant IA Investigator McBride confiscated Plaintiff's mail and threatened him with disciplinary action if Plaintiff continued to complain about EMCC living conditions</u>. Plaintiff wrote a letter outlining his complaints, and mailed it to his daughter to post on a Facebook page entitled Free Larry Rocky Harris. (Comp, p. 5). Plaintiff mailed the letter on August 28, 2019, but it was confiscated at the direction of Defendant IA Investigator McBride. The Defendant called Plaintiff to his office and told Plaintiff the letter had been destroyed, and any other complaints about theft or phone problems "would result in disciplinary actions." (Amd. Comp., p. 5).

3. <u>On September 3, 2019, Defendant Assistant Warden Hamilton fired Plaintiff from his maintenance job</u>. Plaintiff says the action was taken due to a grievance he filed two days before and Plaintiff's efforts to send his complaints for a social media post. The ARB denied Plaintiff's grievance on October 3, 2019. (Comp., p. 31).

4. On September 7, 2019, Defendant McBride wrote a retaliatory disciplinary ticket against the Plaintiff. Plaintiff was accused of trading or trafficking after he used a phone call to convince his daughter to buy a book and send it to another inmate. (Amd. Comp., p. 51). Plaintiff was found guilty and received a seven-day commissary restriction.

5. Defendant McBride wrote a second, retaliatory disciplinary ticket on September 20, 2019. Plaintiff was accused of soliciting inmates to assault an officer in return for payment. (Amd. Comp, p.40). Defendants Wierema and Tapia found Plaintiff guilty and the Warden approved six months in segregation, a revocation of three months good time credits, and a disciplinary transfer. (Amd. Comp., p. 38).

Plaintiff filed a grievance detailing his complaints about the ticket. On November 7, 2019, the ARB found it could not substantiate Plaintiff's claim of retaliation, so this portion of the grievance was denied. (Amd. Comp., p. 37). However, the ARB expunged the disciplinary report. The board found although Defendant Officer Wierema and Officer Tapia signed the Adjustment Committee Report, Officer Tapia was not working on the date listed. (Amd. Comp., p. 37).

Plaintiff says he had already been transferred to Pinckneyville Correctional Center on November 6, 2019, a facility with "harsher conditions of confinement." (Amd. Comp., p. 7). In addition, Plaintiff says he still spent 62 days in segregation.

6. Defendants Burke, McBride, and Tyus "targeted" Plaintiff "with segregation placement" based on the letter Plaintiff attempted to send to his daughter. (Amd. Comp., p. 6). The Court is unable to determine the basis of this claim. It is unclear

4

what Plaintiff means by "targeted'" and none of the IA employees were involved in placing Plaintiff in segregation. (Amd. Comp., p. 6). Therefore, Plaintiff has not identified specific, retaliatory conduct.

7) <u>IDOC Director Jeffreys and Transfer Coordinator Stevens allowed the discipline to remain in effect even after the disciplinary ticket was expunged</u>. The ARB expunged the discipline on November 7, 2019, but Plaintiff was already transferred to Pinckneyville Correctional Center and continued to serve time in segregation.

The Court notes Plaintiff signed his initial complaint in this case on November 20, 2019 and it was filed with the Court on November 22, 2019. Based on the face of the complaint, the Plaintiff could not have fully exhausted his administrative remedies for any claim involving the discipline served after November 7, 2019 before he filed his first complaint. *See Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002); *Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002). Therefore, Plaintiff cannot proceed with his claim against Defendants Jefferys and Stevens.[2]

Therefore, Plaintiff has adequately alleged Defendants IA Lieutenant Burke, IA Officer McBride, IA Officer Tyus, Assistant Warden Hamilton, Officer Wierema, and Officer Tapia retaliated against Plaintiff for either his complaints, grievances, or an attempt to send letters for a social media post. The Defendants retaliated by refusing to investigate a theft, confiscating a letter with complaints about living conditions, firing

---

[2] If Plaintiff believes he did exhaust all available administrative remedies for this claim before November 20, 2019, he may file a motion to reconsider this merit review order and provide the date he received the ARB response.

5

him from a job, writing a false disciplinary ticket or finding him guilty of the false ticket, and disciplining Plaintiff with segregation and a disciplinary transfer. Plaintiff's retaliation claim is limited to these individuals and the specific conduct outlined in paragraphs #1-5 above.

Plaintiff next claims he was subject to inhumane conditions of confinement at EMCC because he was placed in a cell with no hot water or heat from September 13, 2019 to September 27, 2017; in a second cell with no heat or hot water from September 27, 2019 to October 13, 2019; and he was placed in a third cell from October 13, 2019 to November 6, 2019 with no heat, no hot water, a leaking toilet, and urine and feces on the walls and floor.

Plaintiff does not state who was responsible for his placement in the cells. For instance, which Defendant did Plaintiff inform of the conditions in each cell, but failed to take any action? Furthermore, since Plaintiff has not provided this information, this claim does not appear to be related to Plaintiff's retaliation claim. *See George v Smith,* 507 F.3d 605, 607 (7th Cir. 2007)("multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2). Therefore, Plaintiff has failed to articulate a claim based on his conditions of confinement.

Plaintiff finally alleges Defendants Brannon, Hamilton, Burke, McBride, Tyus Wierma, and Tapia violated his due process rights during the disciplinary proceedings. Plaintiff claims the Defendants violated his constitutional rights based on the procedures used during the hearing. For instance, Plaintiff says he was not allowed to

6

call witnesses, even though he had listed two individuals. In addition, Defendants Wierema and Tapia falsified the date of the hearing. Both claims pertain to the September 20, 2019 disciplinary ticket which the ARB expunged shortly before Plaintiff filed his complaint based on the date of Defendant Tapia's signature.

The Seventh Circuit has held there is "no denial of due process if the error the inmate complains of is corrected in the administrative appeal process." *Morissette v. Peters*, 45 F.3d 1119, 1122 (7th Cir. 1995). However, Seventh Circuit also indicated in dicta that this rule is only applicable if the appeal process corrects the "procedural error before the punishment has begun." *Id.* at FN. 4 (7th Cir. 1994) *citing Walker v. Bates*, 23 F.3d 652, 657-59 (2d Cir. 1994).

Plaintiff was already transferred and began serving time in segregation before the ticket was expunged. Therefore, the Court will not dismiss this claim at the initial merit review. *See Lopez v. Bergee*, 2018 WL 2305691, at *1 (C.D.Ill. May 21, 2018) ("the Court will not dismiss Plaintiff's due process claim at merit review on the grounds that his ticket was expunged since he had already served his time in segregation."); *Trainauskas v. Fralicker*, 2018 WL 1183867, at *4 (S.D.Ill. March 7, 2018)(allowing due process claim to proceed at initial review dispute expunged ticket). However, Plaintiff's due process claim is limited to the Defendants Wierema, Tapia, and Brannon since they were the only individuals directly involved in the Adjustment Committee finding and discipline imposed.

CONCLUSION

The Court finds Plaintiff has stated a First Amendment retaliation claim and a Fourteenth Amendment Due Process claim. If Plaintiff chooses to file a Second Amended Complaint, his complaint must include all claims against all Defendants and must not refer to any previous complaint. Federal Rule of Civil Procedure 8 requires "a short and plan statement" of any intended claim. *See* Fed.R.Civ.P. 8(a)(2). Therefore, Plaintiff should state his claim only once in the body of his complaint and clearly explain how each named Defendant was involved. Plaintiff should not attach exhibits to his complaint.

IT IS THEREFORE ORDERED:

1) Pursuant to its merit review of the complaint under 28 U.S.C. § 1915A, the Court finds the Plaintiff alleges: a) Defendants IA Lieutenant Burke, IA Officer McBride, IA Officer Tyus, Assistant Warden Hamilton, Officer Wierema, and Officer Tapia retaliated against Plaintiff for his complaints, grievances, or attempted social medical posts with five specific retaliatory acts outlined in this order; and b) Defendants Wierema, Tapia, and Brannon violated Plaintiff's due process rights during the hearing on the September 20, 2019 disciplinary ticket. The claims are stated against the Defendants in their individual capacities only. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

2) This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, in order to give

Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

3) The Court will attempt service on Defendants by mailing each Defendant a waiver of service. Defendants have 60 days from service to file an Answer. If Defendants have not filed Answers or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

4) With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5) Defendants shall file an answer within 60 days of the date the waiver is sent by the Clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of

those positions unless and until a motion is filed by Defendants. Therefore, no response to the answer is necessary or will be considered.

6) Once counsel has appeared for a Defendant, Plaintiff need not send copies of his filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send a notice of electronic filing to defense counsel. The notice of electronic filing shall constitute service on Defendants pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

7) Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendants shall arrange the time for the deposition.

8) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO:**

**1) Grant Plaintiff's motion for leave to amend pursuant to Federal Rule of Civil Procedure 15, [5]; 2) Dismiss Defendants IDOC Director Jefferys and Transfer Coordinator Stevens identified in the First Amendment Complaint [5] for failure to state a claim upon which relief can be granted pursuant to by 28 U.S.C. §1915A; 3) Attempt service on Defendants pursuant to the standard procedures; and, 4) Set an internal court deadline 60 days from the entry of this**

**order for the court to check on the status of service and enter scheduling deadlines.**

ENTERED this 3rd day of February, 2020.

s/James E. Shadid
_____
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE